I will take co-counsel. Take co-counsel. Nice to have co-counsel. 416-0346, Berff Jones v. Workers' Compensation Comm'n Pay and Please of Court, Counsel. Your Honors, this is a case that's got rather convoluted history. This is the second time we've been here. The first time, the record was incomplete, and the appeal was dismissed for lack of jurisdiction. The case was initially tried, and it was appealed to the Circuit Court in Douglas County, where it was reversed and remanded. This appeal today comes from the appeal of the decision on remand and that decision being upheld by the Circuit Court of Coles County. However, you'd agree, we review the original decision of the Commission to determine if that's correct. I'm sorry, Your Honor. We review the original decision of the Commission to determine if that's correct. That is correct, Your Honor. Okay. I just wanted to clarify that. That's why I will spend most of my time dealing with that decision, because I believe that that decision was, in fact, correct. The circumstances surrounding this claim are well briefed, and they're in the record. Basically, it stems from a trip and fall incident on the part of the petitioner who was out for a walk. She fell on the sidewalk out in front of the respondent's factory and tried to break her fall and ended up suffering a wrist fracture. The case was tried. The arbitrator found, and I'm looking at the arbitrator's decision here, the arbitrator found, after taking the evidence and testimony of the petitioner and her witness, as well as the employer's witness, found that the petitioner and her witness were both inconsistent with regard to their opinions of what had actually happened. At the end of the day, he found Howard Sutton, who testified on behalf of the respondent, his testimony was that, and photographs entered the trial, showed that there was no defect in the sidewalk itself. Counsel? Yes, Your Honor. Go ahead. How do you categorize the risk in this case? How do I categorize? We categorize the risk to which the claimant is normally exposed. Do we not as part of our analysis? Yes, sir. That's appropriate. So which group did she fall into? I believe this is an unexplained fall, and I think in order for the petitioner to have prevailed in this claim, she would have to prove that she was subjected to a risk greater than that of the general public. So it's a neutral risk. Yes, Your Honor. It's one in which the general public is equally exposed. Yes, Your Honor. It was a public entrance and exit, and every person that goes in and out of the respondent's facility, with the exception of delivery personnel, used that entrance. Who's Mr. Sutton? Mr. Sutton is the HR or the Safety Director, I'm sorry, Human Resources Director for Herff Jones. Mr. Sutton testified that he went out, the first thing he did when the fall was reported was to get an ice pack for the petitioner's wrist because she was complaining of pain, and then he immediately went out and surveyed the area. He testified at trial that he noticed nothing, no foreign objects on the sidewalk. Nothing that would have explained her fall? That's correct, Your Honor. What did the claimant say? How did she explain the fall? What did she testify to as to the mechanism of the fall? Initially, the claimant said that they were walking out of the facility, and this Vicki Henry, who was her coworker and was walking with her, had gotten a few steps behind. She testified that she turned to say something to Ms. Henry, and her ankle rolled, and she began to fall. Initially, she said she didn't know if she had stepped too close to the edge and stepped off into the flower beds or what caused her to fall. Subsequent to that initial report and at trial, she testified that she has had time to reflect on what happened, and she believes she might have stepped on a rock. But she wasn't certain about that, was she? That's affirmative, Your Honor. She was not. Neither was Ms. Henry. Ms. Henry testified at trial that after she testified that she didn't see what caused Ms. Everson to fall, only that she saw her falling and tried to assist her. She testified that after Ms. Everson fell, she went to pick up her shoe and help her up, and at that time she noticed some rocks on the sidewalk close to her shoe, where her shoe had ended up landing. She testified on cross-exam that it's entirely possible, I believe it was either her or Ms. Everson, one or the other testified that it certainly was possible that the rocks that Ms. Henry testified to having seen could have been kicked up in the course of the fall because she fell right on the edge of the sidewalk by the flower beds where the gravel is located. So that's the gist of your argument? Yes. Just merely walking across the sidewalk is not a greater risk than the public, and that's your argument? Yes, Your Honor. That's true. Counsel, granted that we're reviewing the Commissioner's decision, I would like you to comment on the Douglas County Circuit Court's written decision here in the legal analysis used. And just quoting from that decision, the court stated, this court finds, therefore, that there are disputed facts, namely what caused the fall. This allows the court to consider this a question of law. Well, at the risk of being critical of a fellow judge, Your Honor, I think that Judge Carroll simply is wrong in that analysis. For it to be a matter of law and, therefore, a de novo review, there would have to be no facts in dispute, only whatever inferences were drawn from those facts. In this case, clearly, there's a dispute on what caused the petitioner to fall. Therefore, the standard of review at a certain court at that level was clearly a manifest way of the evidence. The court goes on in the very next sentence to state, secondly, even if there is no undisputed fact, the court will find on a review of case law that the Commissioner's finding is against the manifest way of the evidence. Can you comment on that? He doesn't cite any basis for that. He doesn't cite what evidence shows that there's a manifest difference. In order for a manifest way, for something to be against the manifest way of the evidence, there has to be a clear opposite conclusion. You'd also be dealing with a situation where there were disputed facts or inferences. The circuit court is indicating that under a manifest way review, there are no undisputed facts. Again, maybe not accurately identifying the correct legal proposition here  That's correct, Your Honor. He also comes up with something he calls automatic liability. I've been doing comp for 15 years, and other than a statutory requirement, I don't know what automatic liability would be. Clearly, Judge Carroll, and not to put words in counsel's mouth, but I would suspect that counsel would agree with me that that was one of the longest and most Socratic circuit court arguments I've ever made. Ms. Cable and I spent a considerable amount of time trying to educate, or I shouldn't say educate, that's a bad word, trying to make our opinions of what the law was in standard review to Judge Carroll. Well, perhaps he was trying to be thorough, and I don't want to oversimplify this, but a disputed issue of fact cannot by definition be a question of law, can it? Isn't that the be all end all of the definition? That's correct, Your Honor. Okay. We would ask that this court reinstate the original commission decision. However, in the time remaining, I also wanted to address the decision on remand briefly, and I think we argued this in the briefs as well, but the commission on remand found, they found that the scopolamine ligament tear in the claimant's wrist was degenerative in nature based on her treating doctor's records, and they deemed that that portion of her risk injury was not work related. However, the commission then went on to award all of the medical benefits, or all of the medical bills that were entered in evidence at the original trial to Ms. Everson-Aldini. Our position is that in the event that you do find that the original decision should not be reinstated, our position is that there is no way with the way the bills are differentiated in the record to determine what costs associated with her treatment and surgery were related with the scopolamine ligament tear and what parts were related strictly to the fracture in the wrist. So at the very least, we would ask that that particular issue be remanded to the commission to determine the proper amount of medical billings that should be awarded. Thank you. Thank you, counsel. You have time until 5. Counsel, you may respond. May it please the court, counsel. As counsel previously stated, there's two primary issues. Who are you? I'm sorry. I'm Jennifer Cable, and I represent the appellee, Ms. Eva Everson. As counsel stated, there's two primary issues before the court today, and those issues are whether or not the injuries sustained by Eva Everson arose out of her employment. And the second issue was the issue of the medical bills and whether they are properly paid. However, I'd like to jump directly into a very important issue, which I think is directly on point and necessary for the court to understand in order to make a determination as to the arises out of issue, and that's the adverse inference. We heard testimony, or excuse me, not testimony. We heard statements from opposing counsel regarding statements made during the arbitration. What's important here is that Howard Sutton, the human resources manager, whom Eva Everson reported her fall to, went out to the scene of the accident 10 minutes after that accident occurred, and he took photographs of the scene depicted at that time. Were those the photographs that they submitted at arbitration? No, they were not. They submitted pictures that were taken over a month later by an insurance adjuster. When asked why they did not submit the photographs taken 10 minutes later after the accident, the only reason that was provided was that they weren't date and time stamped. Well, everyone knows as far as foundation is concerned, Mr. Sutton could have easily proven and authenticated those photographs by the fact that he was a person who took them. It's an interesting argument, but does the respondent have any burden of proof at all? Does the respondent have to present any evidence? Does the respondent have to present any evidence? Yes. There's no discovery in a workers' compensation case, but I don't think that that allows you to step outside the rules of evidence. A very important common rule of evidence is the issue of the adverse inference. Asked in a different way, did the claimant request that the arbitrator draw an adverse inference? Did the claimant ask? Yes, the claimant did. In the claimant's proposed decision, the issue of the adverse inference was thoroughly addressed. However, in the arbitrator's decision, no reference is made to that. The record is absolutely silent on it. I think when we read it in its entirety, I think the only inference that you can draw from that is that the arbitrator and the commission failed to properly consider the adverse inference. Had they considered it, would it not have been part of that record? I submit to this Court that it would have. Was that timely? Was it incumbent on the claimant to raise the issue of an adverse inference at the time of the arbitration hearing? Well, I would submit to this Court that I believe the issue was properly addressed by way of the proposed decision that was submitted by Eva Everson. But that's not a hearing. That's just a proposed decision that you're presenting after that hearing. I understand that. Okay. I'd still ask that this Court consider the fact that the adverse inference was failed to be drawn. Even if Eva Everson did not argue it at the actual time of hearing, I think it's still the duty of the arbitrator to consider that evidentiary issue. It is the duty of the arbitrator to make those presumptions which are necessary. But I'm still having a problem with the procedural aspect of that. I'm understanding the proposed decision is at the conclusion of all groups. Is it not? It is. But it's prior to a determination. So now the question is, prior to that time, was the arbitrator presented with that issue, asked to make some consideration of that issue, at least, before it was closed? Well, I think that... And really, can an arbitrator consider anything in the proposed opinion that was never presented at hearing? Well, I think that the issue was absolutely addressed at the hearing whenever it was brought up, that that evidence was solely in the possession of Howard Sutton, the employer. That information was never provided, or those pictures were never provided. That was the testimony that was presented. And the only reason that was given was that it wasn't date and time stamped. I think if we look at the Debo case, it sets out some very specific standards in which an adverse inference should be drawn. And those are that the evidence is exclusively in the control of one party, that it's not equally available to the claimant, that a reasonably prudent person would have produced it, and that there's no reasonable excuse for failing to produce it. In his reply brief, counsel... And that was all argued before the arbitrator? What was argued before the arbitrator was this... That wasn't argued, but it was presented as evidence. All of that evidence was within the arbitrator's knowledge at the time of the hearing. I hate to pin you down. Did you ask specifically that an adverse inference be drawn, or you're saying all these facts and circumstances came in, and the arbitrator should have drawn this inference even though you didn't ask the arbitrator? Did you specifically ask the arbitrator to draw and apply the adverse inference rule? I can't answer that without referring specifically to the record. I did not argue the case originally. Without specifically referring to the record, I cannot answer that question. That's fair enough. You may want to get into your other problem here, I think. The overarching issue is the commission seemed to decide this case essentially on a failure of proof, not knowing really the mechanism of the injury. They found that the claimant really admitted she didn't really know. She didn't see any defects. She wasn't exactly sure, which caused the fall. They concluded her testimony as to what caused her fall to be inconsistent and not persuasive. So what do you have to say to that? Well, again, I'm not going to keep going back to that. Without getting into the adverse inference. Okay, without getting into the adverse inference, I think that the evidence presented at trial absolutely supports the position that there were rocks present on the sidewalk, and it was, in fact, the rocks that she tripped on that caused her injury when she fell and caught herself and broke her wrists. And what was the quantum of evidence? The evidence presented was that there were, Ms. Epperson testified at the hearing, that oftentimes employees rushing to the building to get into work would kick up rocks on their way in, that that was a very common occurrence. The second thing that she said, and she consistently stated throughout this, that she said, as I turned, I felt something. I felt like a rock. Let's admit to this court, if she had looked down and seen that rock, she wouldn't have tripped on it. The only way she would have known that there was a rock is if it felt like a rock. Something that felt like a rock caused her to fall down. Can I ask you some specific questions? And this is coming from the record. Tell me if this is wrong. Claimant testified that it was her impression that she stepped on a rock, but she was open to other ideas. First she admitted that she told Sutton that she did not know what happened. And the same answer stated that she told him that she felt that she stepped on a rock. And then when asked whether she saw the rock that she stepped on, claimant stated, I don't recall. Are all those statements so far true? Is that what you testified to? Those statements are true. In the statement which she gave on April 18th, the claimant stated, this is critical, she did not know whether she stepped on a rock and really did not know what happened. Is that her testimony? Her testimony was. Was that her testimony? It was, Your Honor. She gave those questions that were asked, she gave those answers. Right, and she gave open and honest answers that she was not exactly sure what she stepped on, but it felt like a rock. That has been consistent throughout. And I think that's what's key here, is that she felt like it was a rock. She wouldn't have stepped on it if she had seen it and if she knew definitively what it was. I believe that there were rocks there. I think the evidence supports that there are rocks there. Well, there might have been rocks there. It doesn't necessarily mean she stepped on one, does it? I believe that her testimony supports the fact that she stepped on a rock and she injured herself in that manner. Good answer. That's the only way you can answer it. Yes, it is. And so that was the deed, then? Yes, it was. Also, I would address the issue, then, of the arises out of cases that I've cited to in my brief. First and foremost, the Eagle Discount versus the Industrial Commission case. It's a Supreme Court case from 1980. This was a case wherein the claimant was on a work break and he was playing Frisbee in a parking lot. Nothing in that case shows that there was any kind of defect or hazard. He just fell down, tripped, and hurt himself. And the commission, and then subsequently the Supreme Court, found that a compensable injury. Another Supreme Court case would be the Union Starch case. That's a 1974 case, which says that an injury arises out of employment if there's a causal connection between the employment and the injury. A hazard not need be the sole factor, but only a causative factor. Here, in that case, the employee was taking a break on a roof. The roof gave way. He fell down. Well, here again, it's very similar to the Epperson case in that we had a rock. The evidence and the testimonies presented at trial support that there were rocks on the sidewalk. That is what she tripped on. Now, what case was that? That was back when? The Union Starch case out of 1974. Yeah. Sounds a lot like CISPRO, doesn't it? I'm sorry? Sounds a lot like the CISPRO case. So there's just nothing new under the sun. Yes, go ahead. Okay. There are subsequent cases, the village of Villa Park, where the claimant was going up and down stairs, and he gave way on the stairs. They found that a compensable injury and stated that the claimant's employment must create a risk which is greater to the general public. And it can be quantitative or qualitative. But you're not arguing this here. You're not arguing that she was traversing this thing. Your argument is that she fell on a rock. That's your evidence. I'm arguing that she fell on a rock. I'm arguing that, however, though, even if there was no rock, by the sheer number of times that she traversed this path, back and forth, walking with her friends. Greater than that of the average. It is greater than that of the average. And the evidence was to support that. To support that at trial was that the employer was aware that they used to walk inside of the building. The employer then says, you cannot walk inside the building, thereby implicitly allowing them to walk outside. She testified, as did Ms. Henry, her witness to the fall, that it was their common practice to walk outside the building during their breaks. What did you argue before the arbitrator? You argued that theory before the arbitrator? That the frequency was greater than that of the general public? Or is this, again, one of those things that's in the evidence and the arbitrator was supposed to glean that theory? I'm arguing the case law before this panel of judges so that it would best support my client's position. Yes, but you're also aware if you don't advance these theories and make these arguments to a prior effect, they're going to be waived. You can't advance them for the first time on appeal. I think that these theories and everything presented in here was presented as a part of the decision that was submitted, again, to the arbitrator. That decision contained all of the arguments. Back down to that, what is the function of the law of a proposed decision? I mean, do I even have to show up for a hearing anymore? I just issue a proposed decision. I don't have to show up. Is that sufficient? Well, I'd argue to this court that the proposed decision contains each party's recitation of the facts and each party's arguments in support of a ward of benefits or a lack thereof. And so it would stand for each party's position. I think it's a very important part of an arbitrator's determination in the outcome of the case. Thank you. I'm sorry, you're still arguing, yes? I'm still arguing. One other issue that we have before the court is the issue of medical bills. Mr. Schroeder has argued that the medical bills that were submitted should not have been paid. I think that it's important for us to note that he has, in fact, waived his argument on that because he failed to object to it at trial. He objected only on the basis of liability, no objection as to hearsay, and that is all contained very specifically within the record. In Greeney v. The Industrial Commission, the court said a failure to raise an issue before the commission results in its waiver. Mr. Schroeder. Which is what we were just talking about. What's that? Which is what we were just talking about. I would argue that that's different. He failed to object on the record, Your Honor, and therefore has waived his objection to the medical bills at this time. If, in fact, the arbitrator had found that Ms. Epperson's injury arose out of her employment and awarded all of the medical records, which he failed to object to, then that would have been exactly the award that she had on remand. And at no time did he object to any of those records or as necessary treatment or being outside of that which treated the acute injury which she sustained in her fall. Would you admit that that would be an adjunct? If we were to find the commission was correct, there was no employment-related cause of the fall of the failure of proof. In other words, we'd never obviously get to that issue, correct? That would be correct. Thank you. Thank you, counsel. Counsel, you may reply. Briefly, Your Honor, to answer your question, the issue of the jury instructions and the… Jury instructions? Well, that's where the adverse inference comes from, is IPI 5.01, I believe it was. The whole purpose behind the Illinois pattern instructions, at least to my understanding, and I don't do civil or criminal law, but my understanding is those instructions are designed to inform the trier of fact in the current state of the law. I've never seen nor do I know of any provision in the statute that calls for IPIs to be used in a workers' compensation case. Obviously, the trier of fact is the arbitrator and or the commission, and one would expect the trier of fact to be well-versed in the law. As far as the adverse inference, there was no request at trial for the arbitrator to… To apply that rule? To apply that rule or to make an adverse inference. Second, in fact, if I could expand it just a little bit more, I wasn't even aware of these photographs that are the subject of this adverse inference thing. The witness, Mr. Sutton, when I put him on, he brought the photographs with him that I had asked for. I wasn't even aware of the other photographs, and they just came up in discussion at trial. But nonetheless, there was never a request for an adverse inference because of that. The Eagle discount… Well, I won't even go into that. It's not necessary. The proposed decisions, I think Justice Holbridge is correct in that the proposed decisions play no part or should play no part in the arbitrator's weighing of the evidence. The proofs are closed by the time the proposed decisions are submitted. My argument would be in that respect that if they were supposed to be part of the arbitrator's considerations, what counsel appears to be advocating is that those are additional arguments that can be submitted. Or additional evidence. Yes, Your Honor, or additional evidence post-hearing. And if that was the case, certainly the legislature would have put something in the worker's comp statute to allow for that, which they haven't done. I'm just asking for clarification here. Does the record affirmatively establish that the arbitrator did not consider the absence of these photos? In other words, is there something in the arbitrator's decision to the effect, I have an understanding that these photos were not produced, yet I am not drawing an adverse inference? Because stated another way, isn't it incumbent on claimant to establish that the arbitrator didn't follow the law, assuming that the arbitrator is to have drawn an adverse inference under these circumstances? The answer to your two questions are no and yes. No, there is nothing in the record that indicates that the arbitrator made an actual finding that we're aware of these photographs, but I refuse to draw an adverse inference. And yes, if that's what needs to happen, then it's incumbent on the claimant to ask whatever questions or make whatever offers of proof at trial, not in his or her submitted proposed decision, so that the opposite party has the opportunity to respond to those allegations and that evidence. And briefly, with regard to the records, we objected to all of the medical records and all of the medical billings. As far as a hearsay objection, my recollection is, and I could be wrong, but my recollection is those records that were entered in at trial were certified. So they would have come in anyway over an objection. So at the time, the allegation on the part of the petitioner was that her entire wrist problem, the surgery, the medical that was associated with the wrist injury were all related to her fall, which she claimed arose out of her employment. Our contention was that none of that was the case, and all of the billings and all of the records were objected to. Thank you, Your Honor. Thank you, counsel, both for your arguments in this matter. We've taken our advisement, and the written disposition shall issue the court the standard degree.